So let me call the first case, which is Vaskovska v. Lynch. Thank you. Morning. Morning, Your Honor. Benjamin Nelson, Judge Petitioner. Katerina Vaskovska, Co-Counsel Nicole Hallis of the University of Buffalo School of Law. May it please the Court, This case presents the question whether a conviction for simple possession of a narcotic-containing substance of as little as one-eighth of an ounce can ever constitute a particularly serious crime for immigration purposes. We submit that it cannot, and that the I.J. and the B.I.A. committed legal error in reaching the opposite answer. The I.J. erred by failing to perform the first step. If the petitioner had been convicted of an offense that was labeled possession with intent to distribute for the same amount, would you be taking the same position? No, Your Honor. Well, then I don't understand, because isn't our law clear that there is not a categorical approach in dealing with this particular question, and therefore you look to what the facts of the offense were to determine whether it's a particularly serious crime? It's not exactly. The first step of the inquiry required by B.I.A. precedent is analogous to the categorical approach, or the modified categorical approach. Well, but first of all, your client didn't argue that before the B.I.A., right? All she did was suggest that, or argue that, the facts and circumstances in their totality did not add up to a particularly serious crime. Respectfully, she did argue that the elements of her offense only, simple possession, could not constitute a particularly serious crime. And in the alternative, she argued that if it were to reach the second step of the inquiry, the B.I.A. should consider facts and circumstances. Is there some reference to the record that you have handy? If you don't have it handy, it doesn't matter. We'll find it. Yes, Your Honor. I refer you to the supplemental memorandum on appeal to the B.I.A., pages 573 and 574 of the record. Okay. Counsel below made clear that her primary contention was because this was a possession-only offense with no trafficking elements, and she relied on B.I.A. precedent, matter of taboos of Alfonso. All right. Well, let's assume that that's correct and it's not waived. I still don't understand how, if the facts of the offense, of this particular way of committing this particular offense, could be a particularly serious offense, how can you say that categorically that inquiry is precluded? Because the whole point is, is this the kind of offense that could be particularly serious when you turn to the facts? And you already conceded that if you look at all the facts, the standard could be met. Well, it's the criminal conviction that provides immigration courts jurisdiction to predicate removability and ineligibility for certain forms of relief. It's not the conduct, but it's the conviction. And so in that sense, what B.I.A. precedent requires is first a determination, if a criminal offense is not already listed, enumerated in the INA as an aggravated felony, then it must examine the elements only and determine that those elements, at least potentially. Well, but those elements potentially, I think you've already conceded, when combined with other aggravating facts, could be a particularly serious offense. Respectfully, no, Your Honor. If I appear to concede that, I misspoke. A federal immigration court may not ex post enhance the level of criminal conviction. But no one's enhancing the level of conviction. The issue is whether this offense can be committed in a way that would be a particularly serious offense. And I don't mean to put words in your mouth, but I thought you told me that possession with intent to distribute would be a particularly serious offense. Is that what she was convicted of, possession with intent to distribute? No, Your Honor. Mere possession. Unknowing and unlawful possession were the only elements. It was the facts and circumstances that then manifested that there was distribution involved, correct? That's correct, Judge Raggi. I was looking at the BIA's application of the NAM two-prong test, and I did not find any case in which a court or the agency itself remanded for a failure to perform the first-prong element analysis. It seemed to me from the cases that the agency and courts are treating it as a holistic analysis. Have I overlooked some precedent that supports your construction here? There are decisions in the federal courts of appeals that have reversed and remanded for the failure to perform the first step. Give me a cite to a case that has done that. I would cite to the opinion cited in our brief. A Third Circuit opinion, 633rd Federal Third 201. Also, you'll find it. Well, here the problem is not the failure to do that. I mean, the agency specifically references the test in its decision. It refers to the elements test. Now, whether it performed it incorrectly or what, I'm not sure what your argument is. But it's not that it overlooked it. The question is whether this is holistic, though. It's holistic at the second step only, and something has to be performed at the first step. We agree that the BIA, in its opinion — Help me out with what's supposed to happen at the first step. If the elements are of an aggravated felony or a serious crime or whatever, why does one even go to the second step? I'm having trouble understanding what the agency was contemplating here. Well, what the decision we rely on, NAM, says is that very, very often the first step will be the end of the inquiry, whether the result is good for the petitioner or bad for the petitioner. Okay. Very, very often the elements alone— They say that, but how often does it actually happen that it comes out favorably to the petitioner? Well, we think the paucity of case law in this area is indicative of the fact that for all the thousands of low-level drug offenses that are brought into criminal courts in this country every day, ineligibility for these rare forms of relief from removal is not often sought by the government when it's not an aggravated felony or when it's not something that already, on the face of the elements alone— Well, I'm sure there are many cases of, I don't know what, spitting on the sidewalk. It's hard to imagine what could be an aggravated version, but it's very easy to imagine facts and circumstances where someone is allowed to plead guilty to simple possession of narcotics where there would be an aggravating circumstance in the manner in which that particular crime was committed. And I guess I keep coming back to the same point, and this will be the last time I ask. If it is true that the intent to distribute or the actual distribution in connection with simple possession could mean that the total facts and circumstances are a particularly serious offense, how can you say that this is a crime that could never be committed as a particularly serious offense and therefore the elements alone rule it out? Well, we think that VIA precedent makes clear that its jurisdiction, its discretion to predicate ineligibility for these forms of relief is in some sense limited by the discretion of the criminal prosecutor, the executive branch, in determining what the offense of conviction is. And I would submit to you that there are numerous offenses that could give the example of disorderly conduct. If you see that type of offense adjudicated in New York City every day, many, many, many factual scenarios offered by prosecutors describe extremely heinous conduct that if prosecuted to the… Offered by prosecutors and admitted to by the defendant, as in this case. Admitted during the plea elocution, if I'm not mistaken. Is that right? Respectfully, you are mistaken. The elocution supports only the knowing unlawful possession. Anything else we would say is ex post enhanced by the immigration court at a stage where the immigration courts of the United States may not take an offense that would only be a misdemeanor under federal law and relitigate it, so to speak, in order to… It seems to me you're describing the categorical approach, where the courts have said this isn't the categorical approach in this context. Well, we rely on the NAM precedent. And we think that while it is frequently cited for its second holding, which is that once the elements have already brought the statutory offense by itself into a category of particularly serious crimes, then you have this holistic analysis. The first holding of NAM… Why? Why? If the elements by themselves bring it into serious crime, what is the purpose of the second step then? You see, I need you to deal with the fact that the first prong inquiry is not does it bring the offense, but potentially bring the offense. And what does that mean? Exactly, Your Honor. It means… Well, that suggests, as Judge Lynch's first example gave you, that you've got possession of drugs. Now, you can have possession of drugs in all kinds of circumstances, but is possession the kind of conduct that potentially could be a serious crime because the possession could be in order to distribute? And the extra facts here show you that's exactly what it was. Well, no, Your Honor. Possession by itself doesn't get you to possession with intent. But is it potentially the kind of element that could bring it within? And if not, what does the potentially qualifier mean in this standard? It is not. The potentially qualifier we submit refers to crimes that by their elements could pose a specific risk to victims. That's the hallmark of the indicia of potentially serious crimes. Harm or potential harm to victims is the benchmark in most all cases. That means physical crimes, crimes against persons, against the body, sexual abuse, child pornography offenses, which relate directly to the abuser. Is there precedent that drug trafficking is a serious crime? I mean, there's precedent that has held drug trafficking qualifies as a serious crime under this standard. Absolutely. Always. So not necessarily with any proof of a particular victim. Always with statutory proof beyond a reasonable doubt of a trafficking element. Right. You'll find hundreds of cases litigating particularly serious crime applications based on, for instance, a provision of the California Health Code, possession with intent to sell, and analogous state criminal convictions never without a statutory element of intent, at minimum, to sell, to distribute, to package, transport. Counsel, are there any cases where an applicant has been found guilty of a particularly serious crime and passed the second test, the danger to the community test? Absolutely, Your Honor. We think that even if the IJ here had correctly moved to the second stage of the inquiry, that not only are the facts that I've been discussing in argumento as proven or provable, not only are they capable of reputation in this particular case, because this Court has held, for instance, that a pre-sentence investigation report by itself is inherently unreliable, that's a quote from Dixon v. Ashcroft, 2003, published in this case, is inherently unreliable as a method of determining whether a particular immigration petitioner's criminal offense is a particularly serious crime. And in this case, what you have is not even a pre-sentence investigative report, but a pre-plea investigative report. I submit to you that the early stage at which that was prepared, on which the immigration judge faced his conclusion that distribution, sale for profit, was absolutely proven here. Did the petitioner dispute that before the immigration judge, say that wasn't true, that she distributed at the behest of her boyfriend? There are lots of mitigating circumstances here, it seems to me, that could go to a determination that taking all the facts and circumstances into account, this was not a particularly serious offense. But I was not under the impression that petitioner disputed, rather than trying to mitigate, the allegation that she had distributed these prescription medications at her boyfriend's behest. That's correct. She did not dispute it in immigration court. Indeed, explained it, right? There were three transfers, and she said that she basically did it because of her relationship with this individual. I thought that was how the record evolved before the IJ. I think, Judge Raggi, that the actual words of the petitioner during her testimony were very, very limited and disjointed. I'm not sure that she got into a factual explanation that specific. In any event, we don't review the fact-finding, right? Absolutely not. It's a legal error. That's why we submit that the simple failure of the IJ to ever state clearly that he was holding, yes, I find that the elements alone of New York Penal Law 2209, subsection 1, knowing an unlawful possession of this amount of narcotic-containing substance, can potentially bring that offense within a category of particularly serious crimes. We don't think that if he had concluded that, that could be affirmed by the board under its own precedent or by this court. Counsel, your time has long expired. Thank you very much. But you've retained two minutes for about a minute from the government. Good morning. Good morning, Your Honor. I'm from the Implicit Court. Brent Shetfield on behalf of the Attorney General. We're asking that you deny the petitioner's authority to consolidate positions for review in this case because the petitioner has not identified a legal or constitutional error in the board's decisions in which she was required to do so. Counsel, opposing counsel just said it was a legal error to conclude that mere possession was a particularly serious crime. And in so doing, I think what the petitioner is asking the court to do is something that no court that I'm aware of has ever done, which is to impose a preliminary threshold categorical analysis on top of what has historically, dating back to the 80s, been a very fact-intensive and discretionary multi-factor determination. Well, the language from which particularly serious emanates also has the two prongs right in it, particularly serious crime and a danger to the community. Indeed. So doesn't that sound like two prongs to you? The language at issue comes from one sentence of the NAM decision that we discussed before. No, I'm talking about going back to the statute. The statute speaks, if you're talking about – the treaty to which the United States signed on to talking about refoulement? Refoulement, yes. Yes, I'm proud of that. I think what Your Honor is referring to is the fact that the statute references that the particularly serious crime exception to non-refoulement applies where someone, by virtue of committing a particularly serious crime, is a danger to the community. Correct, correct. That's an argument that's been raised by Amici as well as Petitioner. Right, and that's language to which we have signed on and from which emanates the discussion we're having today. There's no dispute that the language says what it says, but the way that the Board has interpreted that language and this Court has deferred to that Board, to the Board's reading – in fact, every Court has deferred to this reading – is that those two parts are, in fact, one analysis. And the best place to go for this is the 1985 decision in the matter of Karbala, which is cited in R3. That's the one that says that the danger to the community is assumed within the analysis of serious crime. I recognize that we deferred to that in Amitovic. But let me ask you then, the Board's view of how you decide what is a particularly serious crime seems to have two steps. And your adversary says that the first step wasn't applied here, the review of the elements. And I'm interested in how you respond to that. Well, right. So now we're talking about the separate issue of that specific sentence in matter of NAM, which refers to once the elements of an offense are found to potentially bring it within the ambit, then all reliable information may be considered. I think the natural starting point that we should all ask ourselves is, well, what did the agency think about this argument? And the truth is that we have no idea what the agency thinks about that argument because they were never presented with the argument. A petitioner, when their case was before the Board, they filed actually two briefs. And at no point in either brief did they argue that the Board should not consider the facts and circumstances of their case. And so your response to counsel's citation to the record at 573.74 is what? Well, I have that part of the record right here, and I don't see it, frankly. It says at the bottom of page 573, it says, initially, it must be recalled that a matter of YL speaks specifically to a drug trafficking offense. However, Ms. Vaskovska was never convicted of such an offense. Rather, she pled guilty to simple possession of a controlled substance. While Ms. Vaskovska did state during her testimony that she sold oxymorphines on three isolated occasions, she still warrants a favorable exercise of discretion under the six-factor test presented in matter of YL. The brief then goes on to discuss the facts and circumstances. So all it says is she wasn't convicted of drug trafficking, which is an argument that's been made repeatedly. And that's not in dispute. Neither the Board nor the immigration judge ever said. In fact, they were very specific as to the opposite, that this was not a drug trafficking case. So there's no – I mean, I simply don't see it from looking at 536. We'll consider the waiver argument, but – or the default argument. But let me ask you, how does the first prong apply? What is the agency looking for? Well, I think Your Honor actually touched on it, which is that the way – when you look at the way this language in matter of NAM has been interpreted, matter of NAM was issued in 2007, so it's been on the books for close to 10 years. And I have not found a single case, Board case or Court of Appeals case, in which the discretionary fact and circumstance-specific analysis was effectively cut off or short-circuited simply because of an analysis of the elements. You know, the language in NAM at one point, and this is at 342, is if the elements of the offense do not potentially bring the crime into a category of particularly serious crimes, the individual facts and circumstances of the offense are of no consequence, which does kind of suggest a threshold inquiry. I suggested to your adversary that I didn't find in the case law that that was how it was being applied. But can you help us out with what it is that the agency is looking for at the first step, or are you saying that there really is no first step and it's just a holistic inquiry of everything? Well, I think to the extent that there – I mean, I think the latter is more true if you look at the way that cases have interpreted the matter of NAM. But to the extent that there is some sort of a first step, I think that it's – that the language of whether the elements potentially bring it within the ambit of a particularly serious crime, I think it's very clear that that language has been read very broadly. And that is in order to facilitate the essence of a particularly serious crime determination. Is it possible that this is just because the government shows some restraint in what offenses they try to characterize as particularly serious offenses? I mean, one could hypothesize that someone was convicted of a misdemeanor offense of littering. And while I'm sure the government wouldn't do it, if the government argued that that was a particularly serious offense, perhaps the board would say this just can't – I can't imagine how this could come under that. Now, of course, the problem is if the facts of the particular case are such as to suggest that this is a particularly aggravated version of the offense, then the case itself generates the potential. It points you to the situations in which there potentially is – the offense would potentially come within that ambit. I think that's right, Your Honor. I mean, importantly, the point I want to make is that whether there is such a case where simply the elements of the offense would not bring it potentially within the ambit of a particularly serious crime, that may be the case, but we simply don't have that. That's for the board to announce through case-by-case adjudication, through precedent. And it may – you know, ten years from now, we may be sitting here, and we may have a case at that point. The board may have found that case by that point, but it hasn't found that yet. What we see when we look at all of the case law, look, we're interpreting a matter of NAM. But you don't have to go that far, of course, right? Because you would argue that possession of narcotics – I take it you would argue that possession of narcotics clearly is an offense that potentially could be committed in a manner that would bring it within the ambit of a particularly serious – Right, and I think there were several good reasons to find that it does potentially fall within the ambit. First, and this kind of dovetails with my exhaustion argument, I think that issue was essentially conceded, you know, based on the way that they briefed the case to the board. So to the extent that there is a separate step necessary, Petitioner basically invited the board to move past that step and get to the facts and circumstances. And then the second is, of course, the matter-of-while decision. Petitioner argues that at some point in their brief that the government misapplied the matter-of-while presumption. I think it's very clear that the presumption in matter-of-while was not applied. What the IJ looked at was the fact that drug-trafficking offenses in immigration are serious business. I mean, there are countless removability provisions predicated on drug offenses. Indeed, Petitioner's offense rendered her removable. So I think that essentially the determination was that an offense involving drugs brings it at least potentially within the ambit of a particularly serious offense. Do you concede that among the facts and circumstances that the agency should consider are particularly mitigating circumstances that might suggest that this offense was not so dangerous? For example, an argument that there was quasi-duress or some special circumstance that might mitigate the offense. Is that something that the board ought to consider or the IJ ought to consider? I can't speak to duress because I don't know that the board has looked at that specific issue. The closest we have is the matter of GGS decision where they looked at mental competency. And the board did not at that point engage in mitigating factors. I had understood the board's inquiry was holistic. Am I misunderstanding? Have I misunderstood that? Can you explain? That basically considered the totality of circumstances. Is that not what it does? It does consider the totality of circumstances, but, again, the important factor is whether those totality of circumstances identify a crime that suggests this person is a danger to the community. Well, the concern I have here is that sometimes mitigating circumstances have to be outweighed against what I'll call the abstract seriousness of the crime. So if a life has been taken, the fact that someone says, well, I was involved in a relationship and I participate, whatever, someone might not give that particularly heavy weight, the mitigating circumstance because of the seriousness of the crime. Other crimes, similar facts might bear more favorable weight for the accused. I just had not understood from your response to Judge Lynch whether you were saying that this is not a holistic inquiry. I didn't mean to suggest that at all. I think it is a holistic inquiry. I was just speaking to you. Because NAB certainly suggests that you can consider the totality of circumstances. Absolutely. I was referring to the one decision in the matter of TGS, which specifically talks about, I believe it talks about mental competency. The question is whether the totality of circumstances suggests that this person, by virtue of the crime they've committed, is a danger to the community. So if it is a mitigating factor that cuts against the determination that this person would be a danger to the community, then, yeah, I think that's a completely fair game. Well, because if you were telling us that the Board failed to consider certain factors because it didn't think it could, that would be an error of law. If you're saying that it just didn't think they outweighed other factors, that gets into a matter that's beyond our review. Exactly. Ultimately, the weighing of the factors is something that this Court can't review. We're simply looking to see if there was a legal error in the application of the Board's press. Counsel, thank you. Your time has expired. Thank you, Your Honor. Mr. Nelson, you've reserved two minutes for rebuttal. I'd like to discuss the requirement that, at the second stage, the IJ and the BIA determine that this particular petitioner does indeed pose a danger to the community. No, I don't think that's what the Board says, and I don't think that's right. The question is whether the offense taken all in all is one that suggests danger to the community. I think that's what NAM says. The Board and this Court, in deferring to it in Antonovich or whatever it's called, have said there is not a separate inquiry into is this person a danger to the community, but there is a danger to the community aspect to deciding whether it's a particularly serious offense. It's a subtle distinction, but it's one you're making much of because you're telling us that we should reinstate a separate inquiry. We think it's true that this Court in Amatovich, more recent cases, has courted Chevron deference to the BIA's determination that as to offenses that are presumptively or per se particularly serious crimes, because they are INA enumerated as aggravated felonies, as to that, no separate dangerousness inquiry is required. Are those cases limited to the presumptive crimes? I believe so. I believe the cases that this Court has held that owe Chevron deference to the agency on that issue. Amatovich took the view that we accepted the BIA's interpretation, and the BIA's interpretation is that whether an alien poses a danger to the community is subsumed within the analysis of whether the crime is particularly serious. It hasn't been that it's subsumed when it's a presumptively serious crime. The aggravated felony presumptions. I think that the cases... I'm asking because we are bound by Amatovich. Yes. And so you've just suggested to us that we should construe Carballi and Amatovich to subsume danger into seriousness when seriousness is determined by reference to the presumptive serious crimes, and I don't see that in the opinions. What am I overlooking? Well, I suppose another way of putting my argument would be that there is a logical incongruity in determining on the one hand that examination of the particular facts and circumstances of this particular offense is necessary. An individualized inquiry to determine, to get to the point where it's a particularly serious crime at all, as was necessary in this case, but on the other hand, no such inquiry into the individual circumstances of this offender as she stands today, whether she represents a danger to this community. I think it may not be very persuasive. You're writing on a clean slate. I might take a different view, but I'm not sure there's some logical inconsistency. You're focused on the facts of this case. Now, that might include the mitigating circumstances and so on, but it might not include, and I think this would be a critical distinction, it might not include a reference to whether the person has rehabilitated herself since the crime. Now, that may not be a very good policy. That may not be what the underlying treaty read ab initio might suggest is appropriate. But it seems to me that's quite clearly what the Board has said and what we have accepted as a correct interpretation of the federal statute is that you look to the facts of the offense. That may be holistic. That may include mitigating circumstances. But if you conclude after doing that that this is a particularly serious offense, then a person who has committed a particularly serious offense is categorically determined to be a danger to the community, independent of some assessment of who are they today, years afterward. Well, we've argued and amici have argued perhaps more pointedly that the scope, the spectrum of reasonable interpretations under the Chevron doctrine is limited in this case by the realm of permissible interpretations under our international law obligations. And so that does affect the Chevron inquiry. It may be – Well, that would be a good argument to make to the court and bank or to the Supreme Court, but it's not what we've said in the past. I can only distinguish what this Court has said in the past, Amatovich and Nethegani, based again on the rare subset of case that we have here, which is the very, very rare circumstance where you don't have an INA-listed aggravated felony and you're moving on to consider whether this variant of this criminal offense in this particular circumstance constitutes a particularly serious crime. And obviously our primary contention is that at the first step it fails. I want to speak very briefly to – How would we accept that argument? The totality of facts here show she was involved in drug trafficking. I could understand if this was some other circumstance, but to conclude that the facts here cannot support a dangerousness finding as a matter of law where what the facts show is drug trafficking is not obvious to me. Help me out. Statutory provisions that give the immigration judge jurisdiction over this case, jurisdiction to find that she is – No, the jurisdiction is the jurisdiction to entertain the application for asylum or withholding. You're now talking about statutes that render her ineligible for that relief. Those aren't jurisdictional statutes. Well, I shouldn't have used that word, but what I meant to say is it doesn't make the immigration judge a fact finder for purposes of the criminal conduct. There are other provisions. Congress knows how to condition an immigration petitioner's status based not on conviction but on conduct. There are other provisions. Right, but the conduct is informing the seriousness determination, and the agency has construed the seriousness determination to incorporate the danger situation. In Amatovic, we were actually a little concerned about that construction but talked about how every other circuit had adopted it, and we thought there was room for differing interpretations, so we accorded Chevron deference, but not without acknowledging some concerns. Right. I guess I was trying to speak more specifically to the first step of the inquiry and whether it was permissible for an IJ to say this was a criminal conviction for possession only. However, I find that it was actually conduct that could be construed as – Well, that goes back to your first argument that it's a matter of law, and, you know, counsel cited those pages in 573-74, and it wasn't apparent to me where you raised it. What's the line where you think you alerted the agency to the fact that you were saying that, as a matter of law, a possession crime could not be a particularly serious offense? Well, I'm glad you phrased it that way because when you say alerted the agency, that highlights the fact that the particular legal argument that counsel below engaged in with the immigration judge was much more focused on her contention and her correct citation to BIA precedent in the matter of Toboso Alfonso that simple possession of drugs alone. Where? We asked you where that was raised, and you showed us – you said page 573-74, and counsel quoted. So if he didn't quote the part you think is pertinent, I want to give you the opportunity to tell us what you think is pertinent. I would refer also to the discussion of the record, pages 720-722, and again following the taking of testimony at 741-742. All the exhaustion cases require, the ones that the government relies on in the submission, is that this court is limited in deciding this case to those issues that formed the basis of the BIA's opinion. There can be no doubt that – What did you tell the agency? You cited us other pages when you were asked, and that seems to have fallen apart. What did you say to the agency in the pages you're now citing to us? Because your adversary is not going to get a chance to stand up again. What did you say to the agency? That a particular BIA precedential opinion holds that simple possession of drugs only without a statutorily proven trafficking element cannot constitute a particularly serious crime. That's what I'm going to find at 741-42. That certainly helps. That's what we're going to find the case says? That it – because I thought we were in agreement that there was no BIA case that applied this categorical first step to preclude an inquiry going further. To Bozo Alfonso, the case I'm referring to now, predates NAM. Yeah. And it's a rather – unlike NAM, which actually repeats the language we rely on five or six times, not just one sentence in the NAM opinion, it's throughout the opinion. To Bozo Alfonso, it deals with the matter briefly, but it suggests that the IJ could not have found that the petitioner's conviction for simple possession of cocaine was a particularly serious – Was there any indication that the facts there were such as to suggest distribution? That's what the government says. The government says that's distinguishable because, unlike here, we have no idea what the facts – but that's precisely the point. The IJ didn't produce the facts and circumstances because the first step of the inquiry holds that if the elements don't get you into the ambit of a particularly serious crime, and this is a direct quote from NAM, the individual facts and circumstances are of no consequence. Thank you. Thank you, counsel. Thank you both for a lively argument. The bench will adjourn for a few minutes.